IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEORGIA STATE CONFERENCE
OF THE NATIONAL ASSOCIATION
FOR THE ADVANCEMENT OF
COLORED PEOPLE, et al.,

      Plaintiffs,

v.

DEKALB COUNTY BOARD OF
REGISTRATION AND ELECTIONS,
et al.,

      Defendants.

Civil Action File No.
1:20-CV-00879-ELR

## DEFENDANTS' MOTION TO DISMISS AND MEMORANDUM OF LAW IN SUPPORT THEREOF

Defendants DeKalb County Board of Registration and Elections (the "BRE"), Anthony Lewis (in his official capacity), Susan Motter (in her official capacity), Dele Lowman Smith (in her official capacity), Samuel Tillman (in his official capacity), Baoky N. Vu (in his official capacity), and Erica Hamilton (in her official capacity) (collectively, "Defendants"), pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), hereby move the Court to dismiss with prejudice Plaintiffs' Complaint (Doc. 1), showing the Court as follows:

## I.     INTRODUCTION

In their Complaint, Plaintiffs Georgia State Conference of the National Association for the Advancement of Colored People ("Georgia NAACP") and Georgia's Coalition for the People's Agenda, Inc. ("GCPA," and together with Georgia NAACP, "Plaintiffs") assert claims against Defendants under the National Voter Registration Act of 1993 (the "NVRA"), 52 U.S.C. §§ 20501-20510, and the First and Fourteenth Amendments to the U.S. Constitution, through 42 U.S.C. § 1983 and independently. These claims should be dismissed based on Defendants' Eleventh Amendment immunity, Plaintiffs' lack of standing,  and Plaintiffs' failure to state a claim upon which relief could be granted.

## II.     FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Georgia NAACP asserts that it is a nonprofit membership organization which works to protect voting rights. Complaint (Doc. 1), ¶ 10. Plaintiff GCPA asserts that it is a nonprofit coalition of more than 30 organizations whose support of voting rights is central to its mission.  *Id*. ¶ 11. Defendant BRE is the governing body that oversees elections and voter registration in DeKalb County, Georgia. *Id*. ¶ 12. Defendants Anthony Lewis, Susan Motter, Dele Lowman Smith, Samuel E. Tillman, and Baoky N. Vu are the individual members of the BRE. *Id*. ¶¶ 13-17. Defendant Erica Hamilton is the Director of the DeKalb County Department

of Voter Registration and Elections. *Id.* ¶ 18.

From time to time, the BRE holds hearings on challenges to voter registrations within the County. Complaint (Doc. 1), ¶¶ 2, 31. As the result of such hearings, the BRE has in some cases voted to cancel a voter registration based on evidence that the challenged voter registration is invalid. *Id.* ¶¶ 2, 31-34. Plaintiffs allege that the BRE's cancellation of certain registrations violates the requirements of federal law because, although the BRE provides written notice to the challenged voter of the challenge to the voter's qualifications, hearing date, and opportunity to be heard on the validity of the voter's registration, the BRE did not also provide a written notice that conformed to the requirements of the NVRA and wait through a two-general election cycle period before cancelling the registrations in question. *Id.* ¶ 29. Plaintiffs further allege that the BRE's solicitation of information from a local municipality regarding the validity of certain voter registrations, and the resulting cancellation of registrations associated with a non-residential property address within that municipality, constitute non-uniform list maintenance conduct in violation of the NVRA, and improperly discriminate against voters "residing in transitional housing or non-traditional residences (such as individuals living on the street) . . . ." in violation of the United States Constitution. *Id.* ¶ 57.

Plaintiffs assert that as a result of Defendants' alleged conduct, Plaintiffs must

divert a portion of their respective resources to educating voters about Defendants' alleged conduct and assisting eligible or potentially eligible voters who have been "purged from the rolls." Complaint (Doc. 1), ¶¶ 10-11. Plaintiffs' prayer for relief requests (1) a declaratory judgment that Defendants violated the NVRA and First and Fourteenth Amendments of the United States Constitution, and (2) that the Court issue an injunction as follows:

- Prohibiting Defendants from cancelling voter registrations without complying with the specific requirements of the NVRA, soliciting challenges to voter registrations from local municipalities, and cancelling voter registrations for individuals who assert domicile in transitional or non-traditional residences; and

- Requiring Defendants to promulgate procedures for cancellation of voters which are consistent with the NVRA, to maintain certain voter records until December 31, 2022, to restore any registrations which were cancelled in violation of the NVRA or the United States Constitution, to count all provisional ballots cast by voters whose registrations were allegedly cancelled in violation of the NVRA and the United States Constitution, to inform voters if any provisional ballots cast in previous elections were improperly rejected, and to adopt revised procedures for adjudicating challenges to voter registrations to comply with the requirements of the NVRA and United States Constitution.

*Id.*, pp. 28-31. Plaintiffs further request that the Court retain jurisdiction to ensure compliance with such injunctive relief, and that Plaintiffs be awarded attorneys' fees and costs. *Id.*

### III.   ARGUMENT AND CITATION TO AUTHORITY

A district court must dismiss a complaint under Federal Rule of Civil Procedure 12(b)(1) if it lacks subject matter jurisdiction. Eleventh Amendment immunity and standing are jurisdictional issues that should be addressed prior to considering the merits of a case. *Curling v. Kemp*, 334 F.Supp.3d 1303, 1314 (N.D. Ga. 2018), *aff'd in part*, *Curling v. Sec'y of State of Georgia*, 761 Fed. Appx. 927 (11th Cir. 2019). As demonstrated below, Eleventh Amendment immunity and principles of standing divest this Court of subject matter jurisdiction over this case.

A district court must also dismiss a complaint under Rule 12(b)(6) if the factual allegations fail to show that the requested relief is plausible and not merely possible or speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When considering a Rule 12(b)(6) motion, the court must accept as true all well-pleaded factual allegations, but conclusory allegations are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009). As set forth below, Plaintiffs have failed to state a claim that Defendants have violated federal law or that they are entitled to injunctive relief as alleged in their Complaint. For these reasons, Plaintiffs' claims should be dismissed.

### A.   The Georgia Election Code

The Georgia Election Code ("Election Code") governs elections and primaries

generally in Georgia. O.C.G.A. § 21-2-1 *et seq*. The Election Code divides authority between state and local officials to carry out its provisions, vesting authority in the State Election Board to promulgate rules and regulations for the legal and orderly conduct of primaries and elections, and in county registrars, election superintendents, and board of election and registration to carry out election laws and regulations. *See* O.C.G.A. § 21-2-31; *see also* Ga. R. & Reg. 183-1-1 *et seq*.

Pursuant to O.C.G.A. § 21-2-40(b), the General Assembly created the BRE through a local act and empowered it with the duties of the election superintendent[1] and board of registrars.[2] Laws 2003, Act 236, § 9. As county registrar, the BRE's duties include, among other things: maintaining offices for the purpose of taking and processing applications for registration and registering electors; receiving and processing applications for ballots, including determining eligibility of electors and checking qualifications; and maintaining completed registration cards, processing and counting provisional ballots (using both powers as superintendent and registrar).

---

[1]    "Superintendent' means: (A) either the probate court of a county or … the county board of elections and registration…if a county has such." O.C.G.A. § 21-2-2(35).

[2]    O.C.G.A. § 21-2-212 implies a county board of registration acts as the county registrar by providing the method of appointing county registrars only where a county does not have a board of registration.

*See* O.C.G.A. §§ 21-2-216, 21-2-381, 21-2-386, 21-2-419.

The Election Code requires the BRE to both regularly examine the qualifications of the voters on its list of electors and to hear challenges to voter eligibility brought by DeKalb County voters. *See* O.C.G.A. §§ 21-2-228, 21-2-229. If the BRE determines that a question exists as to the right of any person to remain on the list of electors, it must hold a hearing thereon and "if, after conducting a hearing, the registrars find that the elector is not qualified to remain on the list of electors, the registrars shall remove the name of such elector from the list of electors." O.C.G.A. §§ 21-2-228(d), (e).  In addition, the Election Code permits any voter to challenge the eligibility of any other voter within the same county. O.C.G.A. § 21-2-229(a). Georgia law requires the BRE to set a hearing on such challenge, following notice to the challenged elector and elector bringing the challenge, and remove the voter's name from the list of electors, if the BRE determines that the elector is not qualified to vote. O.C.G.A. §  21-2-229(d).

These provisions of Georgia law are separate from and independent of the voter list maintenance requirements contemplated under the NVRA and Georgia's voter list maintenance statutes, which mirror the NVRA requirements. The NVRA was passed with "twin objectives—easing barriers to registration and voting, while at the same time protecting electoral integrity and the maintenance of accurate voter

rolls . . . ." *Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019).  To achieve those objectives,

> the law *permits* the states to remove registrants only under defined circumstances — at the request of the voter, by reason of criminal conviction or mental incapacity as provided in state law, or because of death or change of residence; but it also *requires* the states to conduct a general program that makes a reasonable effort to remove the names of voters who have become ineligible on account of death or change of address.

*Id.*, 935 F.3d at 1199.  Georgia's general voter list maintenance program as contemplated by the NVRA is contained in O.C.G.A. §§ 21-2-233, 21-2-234, and 21-2-235, and not the challenge procedures described above.

**B.    Plaintiffs' Claims are Barred by Eleventh Amendment Immunity.**

The Eleventh Amendment bars claims against the state and against counties when acting as an "arm of the state." *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). "Whether a defendant is an 'arm of the State' must be assessed in light of the particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." *Id.* The Eleventh Circuit considers four factors to determine whether an entity acts as an "arm of the State" in executing a particular function: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." *Id.* at 1309 (citations omitted).

A county board of elections acts as an arm of the state for the purposes of conducting elections in general, and as a result, Eleventh Amendment immunity attaches. *See Casey v. Clayton County*, No. 04-CV-00871, 2007 WL 788943 (N.D. Ga. Mar. 14, 2007). In *Casey*, the plaintiff brought an action against the Clayton County Board of Elections ("Board") alleging that she was not selected for the director of elections position because of her race and age. *Id*. at *1. Though the Court determined that the Board was not an arm of the state when hiring an election director, the Court applied the *Manders* factors and explained why Eleventh Amendment immunity would attach to the Board in the management of elections: (1) the General Assembly created the Board, established minimum qualifications and certification requirements for its members, and disciplines its members, (2) the State fixes the duties of the Board, and (3) the county's control over the Board is attenuated. *Id.* at *8 ("for purposes of conducting elections in general, there can be little doubt that Eleventh Amendment immunity would attach").

The same analysis set forth in *Casey* applies to the BRE. First, the General Assembly—not the County—created the BRE and gave it "jurisdiction over the conduct of primaries and elections and the registration of electors in such county…," Laws 2003, Act 236, § 1, including powers and responsibilities concerning the registration of electors. *Id.* at § 9. Second, the State maintains a high degree of

control over the BRE. The BRE acts as the election superintendent and board of registrar for DeKalb County and must exercise the State powers granted to it and duties imposed on it. *Id.* at § 1; O.C.G.A. §§ 21-2-70, 21-2-212. The State requires training and certification of certain BRE members and may discipline those who do not meet the State's requirements. *See* O.C.G.A. §§ 21-2-100, 21-2-101.

In contrast, the County's control over the BRE is attenuated. The BRE is authorized and empowered to organize itself, determine procedural rules, and take action as is appropriate to the management of elections and registrations, as long as it does not conflict with State law. Laws 2003, Act 236, § 13. Moreover, any rule promulgated by a DeKalb executive committee regarding primary conduct shall be null and void if in conflict with the BRE's rules and regulations. *Id.* at § 10. Accordingly, State law heavily controls the BRE's conduct and management of elections, while the County itself has little to no control over the BRE's actions.

The third prong considers what entity funds the BRE. Under O.C.G.A. § 21-2-71, the governing authority must appropriate funds that the BRE "shall deem necessary for the conduct of primaries and elections in such county," including for poll officers, polling places, ballot supplies, maintenance of voting equipment, and other expenses. O.C.G.A. § 21-2-71. The final prong concerns who is liable for adverse judgments against the BRE. Assuming *arguendo* that the County is liable

for a judgment against the BRE, an entity may still act as an arm of the State for the purpose of Eleventh Amendment immunity even if the State is not liable for that entity's adverse judgment. *See Pellitteri v. Prine*, 776 F.3d 777, 783 (11th Cir. 2015).

In sum, the County's connection to the BRE is limited to the appropriation of funds, which is still guided mostly by State law requirements. The BRE promulgates its own organizational and procedural rules and must follow the guidelines as provided by State law. It is clear here, and per the precedent of this Court, that the BRE and its officials act as an "arm of the State" while conducting its voter registration activities. Because this litigation stems from allegations concerning Defendants' management of voter registration and qualifications, Eleventh Amendment immunity applies to Plaintiffs' claims against Defendants.

There is an exception to Eleventh Amendment immunity for suits seeking prospective injunctive relief. *See Ex Parte Young*, 209 U.S. 123, 159-60 (1908). However, this exception does not apply to *any* claim for equitable relief. *Edelman v. Jordan*, 415 U.S. 651, 666 (1974). Rather, the *Ex Parte Young* doctrine is limited to claims for prospective injunctive relief and does not provide an exception to Eleventh Amendment immunity for claims seeking retrospective injunctive relief. *See Buchheit v. Green*, 705 F.3d 1157, 1559 (10th Cir. 2012) (affirming dismissal of plaintiff's claim for injunctive relief as barred by Eleventh Amendment immunity

because requested injunctive relief sought to address past harm rather than prevent prospective violations of law). Therefore, Plaintiffs' request for an injunction to preserve documents, restore voters removed from voter rolls as a result of challenges, and to inform voters if any provisional ballots cast in previous elections were improperly rejected, which is intended to address alleged past violations of federal law, are barred by the Eleventh Amendment. *See id.*

Similarly, the individual Defendants are protected by legislative immunity when approving matters of policy. *See Bogan v. Scott-Harris*, 523 U.S. 44 (1998); *Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009). Accordingly, because Plaintiffs' claims arise out of alleged inadequacies of Defendants' processes and procedures when implementing the voter qualification procedure under state law, the individual Defendants are entitled to legislative immunity and the claims against them must be dismissed.

### C.   Plaintiffs Lack Standing to Bring this Action.

Plaintiffs have the burden to establish standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014). To determine whether a plaintiff has standing, the Court applies a three-prong analysis:

> First, the plaintiff must have suffered an injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of.... Third, it must

be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Curling*, 334 F. Supp. 3d at 1314 (quoting *United States v. Hays*, 515 U.S. 737, 742–43 (1995)).

### 1.  *Plaintiffs Have Failed to Allege a Sufficient Injury In Fact.*

Plaintiffs must show "an invasion of a legally protected interest that is sufficiently concrete and particularized rather than abstract and indefinite."  *Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury*, 773 F.3d 243, 246 (11th Cir. 2014) (citations omitted).  As an organization, Plaintiffs must each show "more than simply a setback to the organization's abstract social interests…." *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982).  Instead, standing necessitates that a defendant's actions impair an organization's ability to engage in its own projects by forcing the organization to divert its resources elsewhere. *Arcia*, 772 F.3d at 1341.

Plaintiffs' only allegation of harm is a conclusory allegation that Defendants' conduct causes them to divert a portion of their respective resources to educating voters about Defendants' alleged conduct and assisting either eligible voters or potential voters who have been "purged from the rolls." Complaint (Doc. 1), ¶¶ 10-11. This allegation, which fails to specify what educational information is being provided to voters, how such educational information is being provided, how Plaintiffs are assisting eligible or potential voters from being "purged," and how

- 13 -

such activities are different from their regular activities, is vague and conclusory and is not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 681.

Moreover, Plaintiffs fail to allege facts sufficient to show that the alleged harm is actual or imminent, rather than conjectural or hypothetical. To constitute injury-in-fact for purposes of standing, a plaintiff must establish that the threatened injury is "certainly impending," and "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Georgia Shift, et al. v. Gwinnett Co., et al*., No. 19-cv-1135, 2020 WL 864938, at *3 (N.D. Ga. Feb. 12, 2020) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 158 (1990), and *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992)).   A plaintiff cannot rely on "a highly attenuated chain of possibilities" to satisfy the requirement that future injury is "certainly impending." *Clapper*, 568 U.S. at 407 (2013).

Here, Plaintiffs fail to point to any individual voter whom Plaintiffs allege was eligible to vote at the time the voter registration was cancelled, or to any individual or group of voters who are at risk of a challenge based on a change of address but who are nevertheless eligible to vote in DeKalb County. "A generalized fear that injurious activity might occur is not sufficiently concrete to confer standing." *Georgia Shift*, 2020 WL 864938, at *4; *see also Clapper*, 568 U.S. at 416 (holding

that incurring costs as a reasonable reaction to a risk of harm in unavailing where the harm is not certainly impending).

Plaintiffs also lack associational standing. Under an associational-standing theory, "[a]n organization has standing to enforce the rights of its members 'when its member would otherwise have standing to sue in their own right, the interests at stake are germane to the organization's purpose, and neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Fla. State Conf. of the NAACP v. Browning*, 522 F.3d 1153, 1160 (11th Cir. 2008). "An organization must show that its members 'face a probability of harm in the near and definite future' to establish injury that is sufficient to confer standing to seek prospective relief.'" *Crittenden*, 347 F. Supp. 3d at 1336 (quoting *Browning*, 522 F.3d at 1160-61). As noted above, Plaintiffs do not allege that there is an imminent risk to any specific individual or group of voters of a challenge based on a change of address, but who are nevertheless eligible to vote.[3] As a result, Plaintiffs have failed to allege facts sufficient to establish an in injury in fact, and therefore lack standing to bring this action.

    2.   *Plaintiffs Cannot Show that Defendants Caused Their Alleged Injury.*

---

[3] Notably, there are no individual plaintiffs alleging violations with respect to their individual voter registration as a result of Defendants' conduct.

Plaintiffs must also show "a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not a result of the independent actions of some third party not before the court." *Lujan*, 504 U.S. at 560 (quotations and alterations omitted). Moreover, Plaintiffs' injuries cannot be self-inflicted. *Clapper*, 568 U.S. at 416.

None of Plaintiffs' alleged injuries—namely, the diversion of resources to educating voters about the cancellation of registrations pursuant to the state law-mandated challenge procedure—are fairly traceable to Defendants. The challenge procedure at issue in this lawsuit is mandated by state law and is not within the purview of Defendants to avoid or ignore. Instead, Plaintiffs' complaints about the state law challenge procedure should be directed to the General Assembly, or potentially the State Election Board, which promulgates rules and regulations for the implementation of state law, rather than to Defendants. Because Plaintiffs' alleged injuries are not traceable to Defendants' independent conduct, Plaintiffs lack standing to assert their claims.

### D.     The Complaint Fails to State a Plausible Claim for Relief.

Though Defendants' Eleventh Amendment immunity and Plaintiffs' lack of standing deprive the Court of subject matter jurisdiction over all of Plaintiffs' claims against Defendants, the following arguments provide additional support for

dismissal.  Primarily, the Complaint fails to state a claim upon which relief may be granted as it fails to allege facts sufficient to establish a violation of federal law and it seeks invalid injunctive relief.

1.      *The Complaint Fails to Allege Facts Sufficient to Establish a Constitutional Violation.*

Plaintiffs allege Defendants' actions manifest as: (1) a failure to send a written notice with the information required under the NVRA and to wait for two general election cycles to pass with no voter activity before cancelling the challenged voter registration; and (2) the improper removal of voters who use a transitional address to register to vote.  In essence, Plaintiffs allege that Defendants' actions violated the rights of voters. However, Defendants' examination of voter qualifications and compliance with the state law procedures under O.C.G.A. §§ 21-2-228 and 21-2-229 does not violate the requirements of the NVRA or the First or Fourteenth Amendments.

a. The NVRA Does Not Prohibit the Removal of Ineligible Voters.

To promote the purpose of ensuring accurate and current voter registration rolls, the NVRA *requires* the states to conduct a general program that makes a reasonable effort to remove the names of voters who have become ineligible on account of death or change of address. *Belitto*, 935 F.3d at 1199. The NVRA sets

forth a specific process that the states can follow to ensure compliance with this requirement. *See* 52 U.S.C. § 20507(c), (d). Georgia's list maintenance program includes the procedural requirements set forth in the NVRA. *See* O.C.G.A. §§ 21-2-233 – 21-2-235.

While the NVRA provides a safe harbor process for list maintenance activities as set forth above, courts have acknowledged that the NVRA requirements for the safe harbor do not prevent the removal of names from the official list of voters of persons who are ineligible to vote. *See, e.g., Bell v. Marinko*, 367 F.3d 588, 591-92 (6th Cir. 2004) ("In creating a list of justifications for removal, Congress did not intend to bar the removal of names from the official list of persons who were ineligible and improperly registered to vote in the first place. The National Voter Registration Act protects only 'eligible' voters from unauthorized removal."); *United States v. Florida*, 870 F.Supp.2d 1346, 1349-50 (N.D. Fla. 2012) (holding that "section (8)(a)(3)'s prohibition on removing a registrant except on specific grounds simply does not apply to an improperly registered noncitizen."). In *Bell*, the Sixth Circuit considered whether the Ohio Board of Elections violated the NVRA when it removed voters from the list of electors in response to challenges brought under Ohio state law. In rejecting the plaintiffs' argument that the removal violated the requirements of the NVRA, the court noted as follows:

> [T]he Board investigated and examined the residence of each appellant through challenge hearings. Based on those examinations, the Board concluded that appellants were not residents of Kelly's Island and were therefore ineligible to vote in the Kelly's Island precinct. They were improperly registered in the first place, and as a result, the voting rolls were inaccurate. As instructed by the National Voter Registration Act, the Board necessarily removed their names from the rolls. . . . Were we to find that the Board's removal of these voters does violate the Act, we would effectively grant, and then protect, the franchise of persons not eligible to vote. Because the Act does not bar the Board's continuing consideration of a voter's residence, and instead encourages the Board to maintain accurate and reliable voting rolls, we find that the Board's procedures in this case do not contravene the National Voter Registration Act.

*Id.*, 367 F.3d at 592.

Similarly, Plaintiffs' claims here would require the Court to accept that Defendants must keep voters on the registered list of electors even if they are no longer eligible to vote in DeKalb County, simply to meet the requirements of the NVRA. However, as set forth above, the NVRA requirements apply to a state's general voter list maintenance program and do not apply to prevent states from removing ineligible voters from their rolls. Because Defendants' obligation to examine Georgia voter qualifications set forth in O.C.G.A. §§ 21-2-228 and 21-2-229 is separate from the list maintenance procedures contemplated by the NVRA and set forth in O.C.G.A. §§ 21-2-233, 21-2-234, and 21-2-235, and because the NVRA does not prevent Defendants from removing ineligible voters from the list of electors, Plaintiffs cannot establish a violation of the NVRA as a matter of law. *See*

O.C.G.A. § 21-2-233(e) ("Nothing in this Code section shall prevent the removal from the list of electors of an elector for ineligibility to vote."); O.C.G.A. § 21-2-234(h) (same); *Belitto*, 935 F.3d at 1205 (noting that "states are permitted to employ more robust procedures" to identify change-of-address ineligibility).

> b. There is No Constitutional Right to Use a Temporary Address to Register to Vote.

Eligible voters are those who qualify as bona fide residents of the precinct in which they are registered or wish to register to vote. *See, e.g., Dunn v. Blumstein*, 405 U.S. 330, 343-44 (1972); *Evans v. Cornman*, 398 U.S. 419, 422 (1970); *Kramer v. Union Free Sch. Dist.*, 395 U.S. 621, 625 (1965). Pursuant to the Election Code,

> [t]he residence of any person shall be held to be in that place in which such person's habitation is fixed, without any present intention of removing therefrom [and] [a] person shall not be considered to have gained a residence in any county or municipality of this state into which such person has come for temporary purposes only without the intention of making such county or municipality such person's permanent place of abode . . . .

O.C.G.A. § 21-2-217(a)(1), (3). The Election Code further provides that "[n]o person shall remain an elector longer than such person shall retain the qualifications under which such person registered." O.C.G.A. § 21-2-216(f). Under Georgia law, a temporary address cannot be used to register to vote. Accordingly, Plaintiffs fail to state a claim of an alleged constitutional law arising out a right to use a temporary address to vote.

2.    *Plaintiffs seek Invalid and Unenforceable Injunctive Relief.*

Federal Rule of Civil Procedure 65(d) requires that an injunction "state its terms specifically" and "describe in reasonable detail…the act or acts restrained or required." The request for injunctive relief set forth in the Complaint fails to meet this standard to the extent it seeks an unenforceable, vague "obey the law" injunction with generic requests for action. For example, Plaintiffs seek an injunction requiring Defendants:

> to promulgate uniform and NVRA-compliant procedures for removing voters from the rolls premise on an alleged change of address . . . [and] to adopt revised procedures for processing and adjudicating challenges to voters' eligibility on the basis that they allegedly moved or do not reside in DeKalb County that comply with the NVRA and the U.S. Constitution . . . .

Complaint (Doc. 1), pp. 30-31. Plaintiffs also seek an injunction requiring Defendants to "maintain, preserve and not destroy until after December 31, 2022 any and all records relating to Defendants' list-maintenance programs that have resulted in challenges to voter eligibility based upon a change of address." Complaint (Doc. 1), p.30.  However, Defendants are already required to maintain list-maintenance records for a period of two years under state law, O.C.G.A. §§ 21-2-236(a), (c), and there is no allegation that Defendants are failing to comply with such requirements. An injunction which does nothing more than instruct a defendant to "obey the law" does not satisfy the specificity requirements of Rule 65(d).  *Burton*

- 21 -

*v. City of Belle Glade* 178 F.3d 1175, 1201 (11th Cir. 1999).

       3.     *The Complaint Fails to State a Claim for § 1983 Liability.*

     A government entity may only be sued under § 1983 when "execution of a government's policy or custom" violates a plaintiff's constitutional rights. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978). To state a claim for a § 1983 violation, a plaintiff must first identify a "policy" or "custom" that caused its issue. *Gold v. City of Miami*, 151 F.3d 1346, 1350 (11th Cir. 1998) (citing *Board of County Com'rs v. Brown*, 520 U.S. 397, 403 (1997)). "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality. A custom is a practice that is so settled and permanent that it takes on the force of law." *Cooper v. Dillon*, 403 F.3d 1208, 1221 (11th Cir. 2005) (citation omitted). A plaintiff must also show that the policy or custom identified caused the violation of the plaintiff's constitutional right. *Vandiver v. Meriwether Cty., Georgia*, 325 F. Supp. 3d 1321, 1326-7 (N.D. Ga. 2018). Finally "a plaintiff must show that the local governmental entity . . . [here the DeKalb Board of Registration and Elections] has authority and responsibility over the governmental function in issue . . . ." *Grech v. Clayton Cty., Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003) (citations omitted).

     Plaintiffs' allegation appears to be that Defendants have a policy or custom of

cancelling voter registrations based on a change of address in violation of the NVRA and the United States Constitution.  However, as set forth above, Defendants were implementing the state law voter qualification challenge procedure, rather than a local policy or custom. Moreover, as demonstrated above, Defendants' compliance with the state law voter qualification challenge procedure does not violate the requirements of the NVRA, which apply instead to the state's general list maintenance program, or the requirements of the United States Constitution, which does not provide a right to use a temporary address to vote. Accordingly, Plaintiffs have failed to establish that Defendants have executed a local government policy or custom resulting in a constitutional violation, and the Court should dismiss the § 1983 claim.  *See Moore v. Dade Cty*, 502 F.Supp.2d 1224 (S.D. Fla. 2007) (finding dismissal of a complaint  proper where a plaintiff fails to plead sufficient facts to state a claim under § 1983).

## IV.   CONCLUSION

The Complaint against Defendants should be dismissed with prejudice because this Court lacks subject matter jurisdiction over Plaintiffs' claim and Plaintiffs have failed to plausibly state a claim upon which relief may be granted.

Respectfully submitted this 22nd day of April, 2020.

Laura K. Johnson
Deputy County Attorney
Georgia Bar No. 392090

Aaron J. Ross
Senior Assistant County Attorney
Georgia Bar No. 461981

s/ Irene B. Vander Els
Irene B. Vander Els
Assistant County Attorney
Georgia Bar No. 033663

*Counsel for Defendants*

PLEASE ADDRESS ALL
COMMUNICATIONS TO:
Aaron J. Ross
ajross@dekalbcountyga.gov
Irene B. Vander Els
ivanderels@dekalbcountyga.gov
**DEKALB COUNTY LAW DEPARTMENT**
1300 Commerce Drive, 5th Floor
Decatur, Georgia 30030
Telephone:  (404) 371-3011
Facsimile:  (404) 371-3024

**CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE
WITH LOCAL RULE 5.1**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system (which document was prepared in Times New Roman font, 14-point type, one of the font and point selections approved by the Court in N.D. Ga. L.R. 5.1(C)), which will automatically send e-mail notification of such filing to the following opposing counsel of record:

Gail Podolsky
D. Barrett Broussard
Carlton Fields, P.A.
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309-3455

Sophia Lin Larkin
Dale E. Ho
125 Broad Street, 18th Floor
New York, New York 10004
Sophia Lin Larkin

Sean J. Young
ACLU of Georgia
1100 Spring Street, N.W.
Atlanta, Georgia 30309

Ezra Rosenberg
Bradley Phillips
Julie Houk
John Powers
The Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005

This 22nd day of April, 2020.

s/ Irene B. Vander Els
Irene B. Vander Els
Assistant County Attorney
DeKalb County Law Department

*One of the Attorneys for Defendants*