IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| GEORGIA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DEKALB COUNTY BOARD OF REGISTRATION AND ELECTIONS, et al.,<br><br>Defendants. | Civil Action File No. 1:20-CV-00879-ELR |

**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants DeKalb County Board of Registration and Elections (the "BRE") and Anthony Lewis, Susan Motter, Dele Lowman Smith, Samuel Tillman, Baoky N. Vu, and Erica Hamilton, all in their official capacities (collectively, "Defendants") respectfully submit this reply in support of their Motion to Dismiss (Doc. 27) as follows:

## I. Defendants are Protected from Suit by Eleventh Amendment Immunity.

### A. Plaintiffs' Eleventh Amendment Analysis Under *Manders* is Inapposite.

As Defendants showed in their opening brief, this Court's order in *Casey v. Clayton County, GA*, 2007 WL 788943 (N.D. Ga. 2007), states that a county board of registration and elections, when conducting elections activity (as is alleged of Defendants here), acts as an arm of the state, for purposes of Eleventh Amendment immunity. Plaintiffs unsuccessfully attempt to distinguish *Casey* by relying on inapposite case law and otherwise dismissing the *Casey* order as "mistaken." Plaintiffs' Brief in Opposition to Motion to Dismiss (Doc. 33) ("Plaintiffs' Brief"), p.16. Specifically, Plaintiffs rely on the reasoning set forth in *Lightfoot v. Henry Cty. Sch. Dist.*, 771 F.3d 764, 770-72 (11th Cir. 2014), and *Cash v. Granville Cty. Bd. Of Education*, 242 F.3d 219 (4th Cir. 2001). However, in those cases, the courts were determining the Eleventh Amendment immunity of a school district and a county board of education, respectively, and the holdings therefore do not provide more pertinent guidance in the present matter than *Casey* regarding whether Defendants are acting as arms of the state for purposes of Eleventh Amendment immunity. To the extent that Defendants are to be compared to another entity, they are more akin to entities such as the sheriff's department in *Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003), or a county board of tax assessors in *Ballard v. Chattooga Co. Bd. of Tax Assessors*, 615 Fed. Appx. 621,

628 (11th Cir. 2015), which were both held to have Eleventh Amendment immunity.

In an effort to differentiate *Casey*, Plaintiffs note that the Court acknowledged that the two financial *Manders* factors appear to militate against Eleventh Amendment immunity; however, reliance on this footnote is misplaced. Plaintiffs' Brief (Doc. 33) p.16 (citing *Casey*, 2007 WL 788943, n.5). The *Casey* Court simply acknowledged that the last two *Manders* factors could weigh against a finding of immunity in the context of hiring practices without deciding the issue. 2007 WL 788943, *9, n.5. As a result, this Court's order in *Casey* provides direct authority to support the DeKalb BRE's entitlement to Eleventh Amendment immunity in this action.

Plaintiffs wrongfully exaggerate the BRE's autonomy while conducting voter registration and challenge hearings and over-emphasize the source of funds and responsibility-for-judgment factors of the *Manders* analysis. The first two prongs of the *Manders'* Eleventh Amendment analysis require the Court to review: (1) how State law defines the entity, and (2) what degree of control the State maintains over the entity. *Manders*, 338 F.3d at 1309. While Plaintiffs concede that the State creates the boards of elections, Plaintiffs wrongfully maintain that Defendants' responsibility to process voter registrations and to hear voter

qualification challenges means that the State has no control over these processes. However, this position fails to consider the overarching power of the State. In fact, the State Election Board was created to "promulgate rules and regulations so as to obtain uniformity in the practices and proceedings of superintendents, registrars, deputy registrars, poll officers, and other officials, as well as the legality and purity in all primaries and elections." O.C.G.A. §§ 21-2-30, 21-2-31. The BRE, on the other hand, was created to carry out the State election laws. O.C.G.A. § 21-2-70. As set forth in detail in the Motion to Dismiss (Doc. 27), the ultimate control over the voter registration and elections process lies with the State General Assembly, Election Board, and Secretary of State. O.C.G.A. § 21-2-1 *et seq.*

Further, Plaintiffs' focus on the third and fourth prongs of the *Manders* analysis, the source-of-funds and responsibility-for-judgment elements, is contrary to case law. Plaintiffs ignore the Court's unequivocal statement in *Casey* that the board of elections acts as an arm of the state while conducting elections, although the county has budgetary authority. *Id.*, 2007 WL 788943, *8. Moreover, this Court casted doubt on whether the County actually has budgetary control in light of State law protections for the elections process. *Id.* Consequently, case law strongly supports the application of Eleventh Amendment immunity to the BRE in this case.

As set forth in Defendants' Motion to Dismiss, Plaintiffs' request for an injunction to preserve documents, restore voters removed from voter rolls as a result of challenges, and to inform voters if any provisional ballots cast in previous elections were improperly rejected, are clearly intended to address alleged past violations of federal law. Defendants' Motion (Doc. 27), pp. 11-12. Although Plaintiffs argue that these remedies are prospective, Plaintiffs cite no case law in support of their argument. Simply because the requested relief would occur in the future, if granted, does not make it prospective; instead, "a court need only conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Verizon Maryland, Inc. v. Public Service Com'n of Maryland*, 535 U.S. 635, 645 (2002) (internal citations omitted). Because the relief described above seeks to redress alleged past harms, rather than prevent prospective violations of federal law, they are barred by the Eleventh Amendment. *See Buchheit v. Green*, 705 F.3d 1157, 1559 (10th Cir. 2012).

## II. To the Extent that Plaintiffs' Claim is Based on a Policy of Processing Challenges in a Particular Way, That Claim is Barred by Legislative Immunity.

Plaintiffs contend that Defendants are not entitled to legislative immunity because the conduct at issue is specific, rather than general in nature, and thus

administrative, rather than legislative. *See* Plaintiffs' Brief (Doc. 33), at p. 19. However, Plaintiffs also appear to argue that Defendants' conduct constitutes a policy or process for purposes of stating a claim under § 1983. *See* Plaintiffs' Brief (Doc. 33), p. 28. To the extent Plaintiffs' claims arise out of alleged inadequacies of Defendants' processes and procedures when investigating voter qualifications under the state law challenge procedure, the individual Defendants are entitled to legislative immunity and the claims against them must be dismissed. *See Ellis v. Coffee Co. Bd. of Registrars*, 981 F.2d 1185, 1190-91 (11th Cir. 1993) (holding that the "Coffee County Commissioners clearly were performing their legislative function when they investigated the voting eligibility of the listed electors on the county precinct list in order to provide the Board of Registrars with the names of those persons no longer qualified to vote in Coffee County").

Although Plaintiffs attempt to distinguish the holding in *Ellis* by characterizing the defendants' conduct as "clarifying ambiguities concerning boundary lines," Plaintiffs' Brief (Doc. 33) at p. 18 n.2, the conduct at issue in *Ellis* was in fact the commissioners' examination of the residence of certain individual voters. *See Ellis*, 981 F.2d at 1187 ("The Coffee County Board of Registrars requested the assistance of the Coffee County Commission in complying with the consent decree by identifying to them voters who were not

qualified to vote in Coffee County."), 1190 (noting the commissioners' statutory responsibility to monitor voter eligibility based on residence within a particular voting precinct). Because the same conduct is at issue in this case, the individual Defendants are similarly entitled to legislative immunity. *See id*.; *see also Bogan v. Scott-Harris*, 523 U.S. 44 (1998) (holding that local legislators are entitled to absolute immunity from § 1983 liability, including a mayor's introduction of a budget and signing into law); *see also Bryant v. Jones*, 575 F.3d 1281 (11th Cir. 2009) (holding that an executive assistant to the CEO was entitled to legislative immunity against any claims arising from his preparation and drafting of a budget proposal).

## III. Plaintiffs Lack Standing to Bring this Action.

As set forth in Defendants' Motion to Dismiss (Doc. 27), Plaintiffs have the burden to establish standing. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540 (2016); *Arcia v. Fla. Sec'y of State*, 772 F.3d 1335 (11th Cir. 2014). There are no individual plaintiffs in this case; accordingly, Plaintiffs must establish either associational or organizational standing. With respect to associational standing, Plaintiffs concede that Defendants' alleged conduct in processing voter challenges is not general in nature but applies to specific individuals, rather than the general population. *See* Plaintiffs' Brief (Doc. 33), p. 18. However, Plaintiffs do not allege that any other

current members were affected by Defendants' alleged conduct, or include sufficient allegations of that harm is imminent to one of their members in the future. There are no allegations that any specific individual members have been or will be improperly removed from the voter rolls in the near and definite future. Therefore, Plaintiffs have failed to establish that any of its individual members have standing to sue. *See Summers v. Earth Island Inst*., 555 U.S. 488, 498 (2009) (requiring organizations to establish that at least one identified member will suffer an injury); *Ga. Republican Party v. Sec. & Exch. Comm'n*, 888 F.3d 1198, 1203-04 (11th Cir. 2018) (rejecting associational standing where plaintiff did not prove that at least one of its identified members is certain to be injured by defendants' alleged conduct).[1]

With respect to organizational standing, Plaintiffs have failed to sufficiently allege injury-in-fact or causation. Although Plaintiffs argue that they have alleged a diversion of resources theory, Plaintiff Georgia Coalition for the People's Agenda, Inc. fails to sufficiently allege the activities to which their resources are diverted, asserting that it is "assisting potential voters who have been purged from

[1] For the same reason, Plaintiffs' attempts to distinguish *Georgia Shift, et al. v. Gwinnett Co., et al*., No. 19-cv-1135, 2020 WL 864938, (N.D. Ga. Feb. 12, 2020), and *Clapper v. Amnesty Int'l*, 568 U.S. 398 (2013), are unavailing, because Plaintiffs fail to allege how Defendants' alleged past conduct has affected or will affect any of its individual members.

the rolls." Complaint, ¶ 11. Without detail regarding the activities to which Plaintiffs' resources are allegedly diverted, Plaintiffs' allegations are conclusory and lack the specificity required to establish injury in fact.

With regard to causation, contrary to Plaintiffs' arguments, they cannot demonstrate "a time period in which the injury will occur," because there are no allegations of any specific pending challenge. *See Fair Fight*, 413 F.Supp. 3d at 1268. Moreover, state law mandates the removal of a voter from the rolls upon a determination that the voter is no longer qualified. *See* O.C.G.A. § 21-2-229(d) ("If the registrars uphold the challenge . . . the person's application for registration shall be rejected or the person's name removed from the list of electors, as appropriate.") Because Plaintiffs' alleged injuries arise out of the mandatory challenge process, they are not traceable to Defendants' independent conduct, and Plaintiffs lack standing to assert their claims.

## IV. The Complaint Fails to State a Plausible Claim for Relief.

### A. Plaintiffs Fail to Establish a Violation of the NVRA.

Plaintiffs have also failed to demonstrate that they have adequately stated a claim for which relief can be granted. First, Plaintiffs have failed to adequately respond to Defendants' argument that the requirements of the NVRA apply to Georgia's list maintenance program, codified at O.C.G.A. §§ 21-2-233, 21-2-234,

and 21-2-235, rather than the separate voter challenge procedures set forth at O.C.G.A. §§ 21-2-229 and 21-2-230. Indeed, Plaintiffs acknowledge that the NVRA applies to "list maintenance procedures," Plaintiffs' Brief, p. 20, as the Eleventh Circuit has acknowledged. *See Bellitto v. Snipes*, 935 F.3d 1192, 1198 (11th Cir. 2019).

Rather than identify any authority that is binding on this Court that supports their position, Plaintiffs point only to the Middle District of North Carolina's decision in *North Carolina State Conference of the NAACP v. Bipartisan Board of Elections and Ethics Enforcement*, No. 16CV1274, 2018 WL 3748172 (M.D.N.C. Aug. 7, 2018).[2] In that case, the defendant boards of elections removed voters from voting rolls based on that fact that private individuals mailed postcards to the challenged voters, which were returned undeliverable. This conduct is substantively identical to the list maintenance procedures contemplated by the NVRA, and thus, distinguishable from Defendants' implementation of the state challenge procedure and reliance on evidence from current occupants of the registered address that the challenged voters do not reside there. Under the state challenge procedure, Defendants are required to consider evidence presented by

[2] Similarly, the consent order in *NAACP v. Hancock Co.*, No. 5:15-cv-414 (M.D. Ga. 2016), entered pursuant to the agreement of the parties, rather than a finding of law by the court, does not dictate the same outcome in the present matter.

qualified electors which calls into question another's right to vote. *See* O.C.G.A. § 21-2-229. What Plaintiffs are suggesting here is that even when presented with such evidence, Defendants cannot take action unless they also follow the requirements of the NVRA. As other courts have held, however, that is contrary to the intent of the NVRA. *See, e.g., Bell v. Marinko*, 367 F.3d 588, 591-92 (6th Cir. 2004); *United States v. Florida*, 870 F.Supp.2d 1346, 1349-50 (N.D. Fla. 2012).

**B. Plaintiffs Fail to Allege Valid Claims Under Section 1983.**

In order to satisfy *Monell's* "policy or custom" requirements with respect to their § 1983 claim against Defendants, Plaintiffs appear to argue that Defendants' implementation of the state challenge statutes is the policy or custom which violates the United States Constitution. *See* Plaintiffs' Brief (Doc. 33), pp. 27-28. Plaintiffs' §1983 claims arise out of alleged conduct which is mandated by statute. *See* O.C.G.A. § 21-2-224(e) (requiring county registrars to provide municipalities with list of voters within municipality to confirm qualifications of voters prior to election); O.C.G.A. § 21-2-217(a)(1), (3) ("[t]he residence of any person shall be held to be in that place in which such person's habitation is fixed, without any present intention of removing therefrom [and] [a] person shall not be considered to have gained a residence in any county or municipality of this state into which such person has come for temporary purposes only without the intention of making such

county or municipality such person's permanent place of abode . . . ."). However, Defendants' implementation of state law does not constitute a county policy or custom which would give rise to liability under *Monell*. *See Georgia Carry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 n.17 (11th Cir. 2012) ("A policy is a decision that is officially adopted by the municipality, or created by an official of such rant that he or she could be said to be acting on behalf of the municipality . . . . A custom is a practice that is so settled and permanent that it takes on the force of law.") (affirming dismissal of county defendant where plaintiffs failed to allege that their prosecution for failing to comply with firearm law was pursuant to County policy).

Plaintiffs also fail to sufficiently allege a constitutional violation arising out of the cancellation of voters based on the use of a temporary residence. In *Pitts v. Black*, 608 F. Supp. 696 (S.D.N.Y. 1984), the Southern District of New York found that the local board of registrars' policy of rejecting a homeless person's application to vote where they had no right or interest in the physical location of residence within the precinct was an undue restriction on the right to vote. *Id*., 608 F. Supp. At 698, 708-09. Similarly, in *Cook v. Board of Registrars*, 320 Ga. App. 447, 450 (2013), the Georgia Court of Appeals reversed the trial court's finding that a voter had been properly removed from the voter rolls due to a change in

domicile, finding that the voter had sufficiently established his intent to remain domiciled in the county at issue. Neither court held that the statutes pertaining to a determination of a voter's residence, and thus, the voter's eligibility to register, were invalid.

**C. Plaintiffs Seek Invalid Injunctive Relief.**

Plaintiffs' request for injunctive relief set forth in the Complaint fails to meet Rule 65(d)'s requirement of specificity and detail to the extent it seeks an unenforceable, vague "obey the law" injunction with generic requests for action, and nothing in Plaintiffs' Brief rectifies this shortcoming. Plaintiffs simply do not articulate what specific procedures they seek. While Plaintiffs cite *Martin v. Kemp*, 341 F. Supp. 3d 1326, 1341 (N.D. Ga. 2018), as an example of the Court enforcing vague injunctive relief, the Court was in fact merely proposing a framework for an injunction and seeking input from the parties as to whether the proposed framework would be workable. Instead, as set forth in *Georgia Shift*, 2020 WL 864938, at *13 (N.D. Ga. Feb. 12, 2020), the Court cannot simply order Defendants to follow the law, as Plaintiffs suggest. *See* Complaint (Doc. 1), pp. 30-31 (seeking an injunction requiring Defendants "to promulgate uniform and NVRA-compliant procedures for removing voters from the rolls premise on an alleged change of address . . . [and] to adopt revised procedures for processing and

adjudicating challenges to voters' eligibility on the basis that they allegedly moved or do not reside in DeKalb County that comply with the NVRA and the U.S. Constitution . . . .").[3]

## IV. CONCLUSION

As set forth herein, the Complaint against Defendants should be dismissed with prejudice, because this Court lacks subject matter jurisdiction over Plaintiffs' claim and Plaintiffs have failed to plausibly state a claim upon which relief may be granted.

Respectfully submitted this 26th day of May, 2020.

Laura K. Johnson
Deputy County Attorney
Georgia Bar No. 392090

Aaron J. Ross
Senior Assistant County Attorney
Georgia Bar No. 461981

s/ Irene B. Vander Els
Irene B. Vander Els

[3] With respect to Plaintiffs' request for an injunction related to Defendants' response to an Open Records Act request, Defendants note that the exhibits referenced by Plaintiffs do not indicate that Defendants failed to respond to Plaintiffs' request. In fact, Defendants produced over one thousand pages of documents in response to Plaintiffs' request, and to the undersigned counsel's knowledge, Plaintiffs have not complained that the production was inadequate or unresponsive in any way.

Assistant County Attorney
Georgia Bar No. 033663

*Counsel for Defendants*

PLEASE ADDRESS ALL
COMMUNICATIONS TO:
Aaron J. Ross
ajross@dekalbcountyga.gov
Irene B. Vander Els
ivanderels@dekalbcountyga.gov
**DEKALB COUNTY LAW DEPARTMENT**
1300 Commerce Drive, 5th Floor
Decatur, Georgia 30030
Telephone: (404) 371-3011
Facsimile: (404) 371-3024

**CERTIFICATE OF SERVICE AND CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 5.1**

I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system (which document was prepared in Times New Roman font, 14-point type, one of the font and point selections approved by the Court in N.D. Ga. L.R. 5.1(C)), which will automatically send e-mail notification of such filing to the following opposing counsel of record:

Gail Podolsky
D. Barrett Broussard
Carlton Fields, P.A.
1201 West Peachtree Street, Suite 3000
Atlanta, Georgia 30309-3455

Sean J. Young
ACLU of Georgia
1100 Spring Street, N.W.
Atlanta, Georgia 30309

Ezra Rosenberg
Bradley Phillips
Julie Houk
John Powers
The Lawyers' Committee for Civil Rights Under Law
1500 K Street NW, Suite 900
Washington, DC 20005

Sophia Lin Larkin
Dale E. Ho
125 Broad Street, 18th Floor
New York, New York 10004

This 26th day of May, 2020.

s/ Irene B. Vander Els
Irene B. Vander Els
Assistant County Attorney
DeKalb County Law Department

*One of the Attorneys for Defendants*