**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

| | | |
|---|---|---|
| GEORGIA STATE CONFERENCE OF THE NATIONAL ASSOCIATION FOR THE ADVANCEMENT OF COLORED PEOPLE, et al., | * * * * * | |
| | * | |
| Plaintiffs, | * * | |
| v. | * * | 1:20-CV-00879-ELR |
| DEKALB COUNTY BOARD OF REGISTRATION AND ELECTIONS, et al., | * * * | |
| | * | |
| Defendants. | * * | |

_____

**O R D E R**

_____

Presently before the Court is Defendants' Motion to Dismiss.  [Doc. 27].  For the reasons below, the Court denies Defendants' motion.

## I.      Background[1]

On February 26, 2020, Plaintiffs The Georgia State Conference of the National Association for the Advancement of Colored People ("Georgia NAACP") and the Georgia Coalition for the People's Agenda ("GCPA") filed this action

---

[1] The Court draws the facts herein from Plaintiffs' Complaint and accepts them as true for the purpose of ruling on Defendants' Motion to Dismiss.

against the DeKalb County Board of Registration and Elections ("DeKalb BRE");

Anthony Lewis, Susan Motter, Dele Lowman Smith, Samuel Tillman, and

Baoky N. Vu, in their official capacities as members of the DeKalb BRE; and Erica

Hamilton, in her official capacity as Director of Voter Registration and Elections

(collectively, the "Individual Defendants").  Compl. [Doc. 1].  In their Complaint,

Plaintiffs allege that Defendants are unlawfully purging voters from the DeKalb

County registration rolls in violation of the National Voter Registration Act of 1993

("NVRA"), 52 U.S.C. §§ 20501-20511, and the First and Fourteenth Amendments

to the U.S. Constitution.  See id.  Defendants now move to dismiss Plaintiffs'

Complaint.  [Doc. 27].  The Court first provides the relevant context for this case

before addressing the merits of Defendants' motion.

### A.    The Parties

As set forth in the Complaint, Plaintiff Georgia NAACP is a nonprofit

membership organization which works to protect voting rights.  Id. ¶ 10.  Similarly,

Plaintiff GCPA is a nonprofit coalition, consisting of more than thirty (30)

organizations, whose support of voting rights is central to its mission.  Id. ¶ 11.

Defendant DeKalb BRE is the governing body that oversees elections and voter

registration in DeKalb County, Georgia.  Id. ¶ 12.  Defendants Lewis, Motter, Smith,

Tillman, and Vu are the individual members of the DeKalb BRE.  Id. ¶¶ 13–17.

Defendant Hamilton is the Director of the DeKalb County Department of Voter Registration and Elections.  Id. ¶ 18.

### B.     Defendants' Removal Procedures

At various times, the DeKalb BRE holds hearings on challenges to voter registrations in its county.  Id. ¶¶ 2, 31.  After these hearings, the DeKalb BRE has, in some cases, voted to cancel a voter registration based on what it contends to be evidence that the registration is invalid.  Id. ¶¶ 2, 31–34.  Plaintiffs allege that the cancellation of certain registrations violates the requirements of federal law because the DeKalb BRE failed to either (1) provide a written notice that conformed to the requirements of the NVRA or (2) wait through two general election cycles before cancelling the registrations in question, as the NVRA requires.  Id. ¶ 29.

Plaintiffs further allege that the DeKalb BRE violates the NVRA by its solicitation of information from certain local municipalities, and not others, regarding the validity of some voter registrations.  Id. ¶ 56.  Plaintiffs contend this practice constitutes prohibited non-uniform list maintenance, in violation of the NVRA.  Id.  Additionally, Plaintiffs allege that this conduct violates the United States Constitution because it improperly discriminates against voters "residing in transitional housing or non-traditional residences[.]"  Id. ¶ 57.  Plaintiffs assert that due to Defendants' procedures, they must divert portions of their respective resources from their primary goals to educating voters about Defendants' practices

as well as assisting eligible (or potentially eligible) voters who have been "purged from the rolls." Id. ¶¶ 10–11.

### C.    Plaintiffs' Complaint and Defendants' Motion to Dismiss

To address Defendants' conduct, Plaintiffs filed the instant Complaint, wherein they bring five (5) counts:

- Count I — Violation of Section 8 of the NVRA, 52 U.S.C. § 20507(d);

- Count II — Violation of Section 8 of the NVRA, 52 U.S.C. § 20507(d)(2);

- Count III — Violation of Section 8 of the NVRA, 52 U.S.C. § 20507(b);

- Count IV — Violation of the Fundamental Right to Vote, 42 U.S.C. § 1983, First and Fourteenth Amendments to the U.S. Constitution; and

- Count V — Violation of the First and Fourteenth Amendments to the U.S. Constitution.

See id. As relief, Plaintiffs request (1) a declaratory judgment that Defendants' conduct violates the NVRA and First and Fourteenth Amendments of the United States Constitution, and (2) that the Court issue an injunction:

1. Prohibiting the purging of voters from the rolls without complying with the NVRA;[2]
2. Prohibiting the solicitation of challenges to voter eligibility from the City of Decatur and other municipalities;

---

[2] Specifically, Plaintiffs request that the Court enjoin Defendants from purging voters from the rolls until: (1) Defendants receive written confirmation from the voter of a change of address, or (2) Defendants provide proper notice and wait two federal election cycles. Compl. at 29.

3. Prohibiting the targeting and purging of voters on the basis that they are domiciled at the Peer Support, Wellness, and Respite Center or other transitional or non-traditional residences;

4. Ordering Defendants to promulgate uniform and NVRA compliant procedures for removing voters from the rolls premised on an alleged change of address;

5. Ordering Defendants to maintain, preserve, and not destroy until after December 31, 2022, any and all records relating to Defendants' list maintenance programs that have resulted in challenges to voter eligibility based upon a change of address;

6. Ordering Defendants to restore to the DeKalb County registration list all voters removed from the list in violation of the NVRA and the U.S. Constitution;

7. Ordering Defendants to count all provisional ballots cast by voters removed from the DeKalb County voter registration list in violation of the NVRA and the U.S. Constitution and, where appropriate, to inform voters if any provisional ballots they cast in previous elections were improperly rejected; and

8. Ordering Defendants to adopt revised procedures for processing and adjudicating challenges to voters' eligibility on the basis that they allegedly moved or do not reside in DeKalb County that comply with the NVRA and the U.S. Constitution.

Id. at 28–31. Plaintiffs further request that the Court retain jurisdiction to ensure compliance with such injunctive relief, and that Plaintiffs be awarded attorneys' fees and costs.  Id.

Defendants now move to dismiss Plaintiffs' Complaint.  [Doc. 27].  After full briefing, and with the benefit of oral argument,[3] this motion is now ripe for the Court's review.

## II.   Discussion

Defendants move to dismiss Plaintiffs' Complaint on three (3) grounds: (1) standing, (2) sovereign immunity, and (3) legislative immunity.[4]  [See id.]  The Court discusses each in turn.

### A.   Standing

The Court begins by addressing the threshold issue of standing.  [See id. at 12–16].  Article III of the Constitution permits federal courts to adjudicate only "actual cases and controversies."  U.S. Const. art. III, § 2.  "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues."  Warth v. Seldin, 422 U.S. 490, 498 (1975).  To establish Article III standing:

> the party invoking the power of the court must show (1) injury in fact, which is an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of; and (3) that the injury is likely to be redressed by a favorable decision.

---

[3] The undersigned held oral argument regarding Defendants' motion on August 26, 2020, via Zoom.  [Doc. 48].

[4] In their motion, Defendants asserted a fourth ground for dismissal, failure to state a claim.  [See Doc. 27 at 16–23].  However, at oral argument, Defendants expressly withdrew this argument as a basis for dismissal.  Thus, the Court does not address the argument in this order.

Cochran v. City of Atlanta, 150 F. Supp. 3d 1305, 1315 (N.D. Ga. 2015) (citing

Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992)) (internal marks

omitted).

Here, Defendants challenge Plaintiffs' standing on two (2) grounds: (1) lack

of injury in fact and (2) failure to establish causation. [Doc. 27 at 13–16]. The Court

addresses each in turn.

1. Injury in Fact

First, Defendants argue that Plaintiffs do not demonstrate injury in fact.

Specifically, Defendants argue that Plaintiffs' injuries are hypothetical, speculative,

and conclusory. [Id. at 13–14]. Upon review, the Court disagrees.

To establish injury in fact, Plaintiffs must show "an invasion of a legally

protected interest that is sufficiently concrete and particularized rather than abstract

and indefinite." Kawa Orthodontics, LLP v. Sec'y, U.S. Dept. of the Treasury, 773

F.3d 243, 246 (11th Cir. 2014) (internal citations omitted). As organizations,

Plaintiffs "may demonstrate a concrete, imminent injury either through a 'diversion-

of-resources' theory or through an 'associational standing' theory." Democratic

Party of Ga., Inc. v. Crittenden, 347 F. Supp. 3d 1324, 1336 (N.D. Ga. 2018) (citing

Arcia v. Fla. Sec'y of State, 772 F.3d 1335, 1341–42 (11th Cir. 2014)). Plaintiffs

contend that they each have standing under both theories. [Doc. 33 at 5].

Under the diversion-of-resources theory, an organization has standing to sue when a defendant's illegal acts impair the organization's ability to engage in its own projects by forcing the organization to divert resources in response. See Arcia, 772 F.3d at 1341 (citing Havens Realty Corp. v. Coleman, 455 U.S. 363, 379 (1982) ("[C]oncrete and demonstrable injury to the organization's activities—with the consequent drain on the organization's resources—constitutes far more than simply a setback to the organization's abstract social interests.")).  According to Eleventh Circuit precedent, organizations can establish standing to challenge election laws by showing that they will have to divert personnel and time to educating potential voters on compliance with the laws and assisting voters who might be left off the registration rolls on Election Day. See Fla. State Conf. of the NAACP v. Browning, 522 F.3d 1153, 1165–66 (11th Cir. 2008).

In accordance with this law, Plaintiffs allege the following with regards to the Georgia NAACP's injury:

> The Georgia NAACP works to protect voting rights through litigation, advocacy, legislation, communication, and outreach, including work to promote voter registration, voter education, get out the vote ("GOTV") efforts, election protection, and census participation. The Georgia NAACP regularly conducts voter registration drives and submits many voter registration applications to DeKalb County elections officials. Defendants' voter purges harm the Georgia NAACP's mission and are causing the Georgia NAACP to divert a portion of its financial and other organizational resources to educating voters about Defendants' purges and assisting eligible voters who have been purged from the rolls. As a result, the Georgia NAACP has and will have fewer

8

resources for its other organizational activities unless Defendants are enjoined from continuing to illegally purge voters.

Compl. ¶ 10.  Similarly, with regards to the GCPA, Plaintiffs aver:

> The GCPA encourages voter registration and participation, particularly among African-American and other underrepresented communities. The GCPA's support of voting rights is central to its mission. The organization regularly commits time and resources to conducting voter registration drivers, voter education, voter ID assistance, Souls to the Polls, and other GOTV efforts in DeKalb County. Defendants' voter purges harm GCPA's mission of encouraging minority voter registration and participation. Defendants' purges are causing GCPA to divert a portion of its financial and other organizational resources to educating voters about Defendants' purges and assisting potential voters who have been purged from the rolls. As a result, the GCPA has and will have fewer resources to dedicate to its other organizational activities unless Defendants are enjoined from continuing to illegally purge voters.

Id. ¶ 11.[5]  The Court finds that these allegations are sufficient to establish injury in fact.  See, e.g., Browning, 522 F.3d at 1165 (holding "an organization suffers an injury in fact when a statute compels it to divert more resources to accomplishing its goals" and "the fact that the added cost has not been estimated and may be slight does not affect standing, which requires only a minimal showing of injury") (internal citation omitted); Fair Fight Action, Inc. v. Raffensperger, 413 F. Supp. 3d 1251, 1267 (N.D. Ga. 2019) (holding that diverting "resources from general voting initiatives or other mission[s] . . . to programs designed to address the impact of the

---

[5] The Court notes that only one Plaintiff is required to demonstrate standing for injunctive relief. See Martin v. Kemp, 341 F. Supp. 3d 1326, 1333 (N.D. Ga. 2018) ("Where only injunctive relief is sought, only one plaintiff with standing is required.") (internal citations omitted).

specific conduct" is sufficient); see also Georgia Coal. for People's Agenda, Inc. v. Kemp, 347 F. Supp. 3d 1251, 1258 (N.D. Ga. 2018) (finding organizational standing pursuant to similar allegations). Thus, Plaintiffs establish the first prong of standing.[6]

2.   Causation

Defendants also challenge Plaintiffs' standing on causation grounds, contending that Defendants are not responsible for Plaintiffs' injuries, and thus, could not have "caused" them.  [Doc. 27 at 16].  As provided by the Supreme Court, "the injury [complained of] has to be fairly traceable to the challenged action of the defendant, and not the result of the independent actions of some third party not before the court." Lujan, 504 U.S. at 560.  Here, Defendants contend that Plaintiffs are harmed by state law, not Defendants' independent conduct.  [Doc. 27 at 16].

The Court finds this argument unavailing.  Taking Plaintiffs' allegations as true, they plainly assert that *Defendants* are improperly *implementing* state law *in violation of* federal law.  See Compl.  Plaintiffs claim that Defendants are directly responsible for this conduct because it is not mandated by state law.  See id.  Because Plaintiffs properly allege that Defendants are responsible for their injuries, the causation prong is satisfied.  See Fair Fight Action, 413 F. Supp. 3d at 1268 (finding that the plaintiffs showed causation when, as here, the complaint contained examples

---

[6] Because the Court finds that Plaintiffs sufficiently demonstrate organizational standing pursuant to the "diversion of resources" theory, the Court need not decide whether Plaintiffs demonstrate "associational standing."

of how the defendants' practices denied voters their right to vote and, as a result, impacted the organizations' missions).

In sum, the Court finds that Plaintiffs sufficiently demonstrate standing. Thus, the Court denies Defendants' motion to dismiss on this ground.

## B. Sovereign Immunity

Next, the Court turns to Defendants' arguments regarding sovereign immunity. [Doc. 27 at 8–12]. Defendants submit two (2) related arguments on this point. [See id.] First, Defendants contend that the DeKalb BRE is an "arm of the State" such that it is entitled to sovereign immunity. [Id. at 8–11]. Second, as to the Individual Defendants, Defendants argue that the Ex Parte Young exception to sovereign immunity does not apply. [Id. at 11–12] (citing 209 U.S. 123 (1908)). The Court addresses each argument in turn.

### 1. Whether the DeKalb BRE is an "Arm of the State"

"The Eleventh Amendment largely shields states from suit in federal courts without their consent, leaving parties with claims against a State to present them, if the State permits, in the State's own tribunals." Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 39 (1994). The Eleventh Amendment's protection extends not only to the state itself, but also to state officers and entities when they act as an "arm of the state." Manders v. Lee, 338 F.3d 1304, 1308 (11th Cir. 2003) (en banc). "Whether a defendant is an 'arm of the State' must be assessed in light of the

11

particular function in which the defendant was engaged when taking the actions out of which liability is asserted to arise." Id.  In other words, the question is whether an entity acts for the State "in a particular area, or on a particular issue." Stanley v. Israel, 843 F.3d 920, 924 (11th Cir. 2016).  Under the traditional Eleventh Amendment paradigm, states are extended immunity, counties and similar municipal corporations are not, and entities that share characteristics of both require a case-by-case analysis.  See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 280 (1977).

To determine whether an entity acts as an "arm of the State" when carrying out a particular function, the Court looks to four (4) factors: "(1) how state law defines the entity; (2) what degree of control the State maintains over the entity; (3) where the entity derives its funds; and (4) who is responsible for judgments against the entity." Manders, 338 F.3d at 1309 ("Manders factors").  "[W]hether an entity is an 'arm of the State' for Eleventh Amendment purposes is ultimately a question of federal law.  But the federal question can be answered only after considering provisions of state law." Id.

Before assessing the Manders factors, the Court finds it necessary to address the one case from this district that has generally considered the question before the Court—that is, whether a board of registration and elections acts as an arm of the State.  In Casey v. Clayton County, Judge Richard Story addressed a suit against the

Clayton County Elections Board concerning its decision not to hire the plaintiff as its director.  No. 04-CV-00871, 2007 WL 788943, at *1 (N.D. Ga. Mar. 14, 2007).  On summary judgment, the Board asserted sovereign immunity as a basis to block the plaintiff's claims.  Id. at *7. Addressing the Board's argument, Judge Story wrote:

> [I]f the Court were to confine its inquiry to whether the Board acts as an arm of the state for purposes of conducting elections in general, there can be little doubt that Eleventh Amendment immunity would attach. . . . *But, it is not the Board's management of elections which is at issue here*. Rather, it is the Board's hiring practices with respect to the Director of Elections which must be considered, and in that respect, the picture of whether the Board acted as an arm of the state is much more murky.

Id. at *8–9 (emphasis added).  Relying primarily on this case, Defendants argue that the DeKalb BRE is entitled to Eleventh Amendment Immunity.  [See Doc. 27 at 9].

Upon review, the Court finds that Casey does not definitively control this case for two (2) reasons.  As an initial matter, a fellow district court judge's opinion is not binding precedent.  See, e.g., McGinley v. Houston, 361 F.3d 1328, 1331 (11th Cir. 2004) ("[A] district judge's decision neither binds another district judge nor binds him[.]").  More significantly, as noted *supra*, "[w]hether a defendant is an 'arm of the State' must be assessed in light of the *particular function* in which the defendant was engaged when taking the actions out of which liability is asserted to arise."  Manders, 338 F.3d at 1308 (emphasis added).  Here, the function at issue is *determining the eligibility* of county voters.  See Compl.  In Casey, the legal question

13

concerned *hiring practices*, and the dicta Defendants rely upon focuses on the *management of elections*. Casey, 2007 WL 788943, at *8–9. Accordingly, while Casey certainly informs the Court's analysis, it does not control, and the Court must conduct an independent assessment of the Manders factors for this case. The Court turns now to that assessment.

*a.*     *Factor One: How State Law Defines the Entity*

The first Manders factor asks how state law defines the entity. Manders, 338 F.3d at 1309. Here, there can be no dispute that the Georgia Assembly created the DeKalb BRE, defined its duties, and empowered it to act on election-related matters. See O.C.G.A. §§ 21-2-70, 212. However, this is not the end of the matter. See Lightfoot v. Henry Cty. Sch. Dist., 771 F.3d 764, 771 (11th Cir. 2014) (rejecting argument that because the county school boards "carr[y] out the State's constitutional duty to provide public education," they are necessarily entitled to Eleventh Amendment immunity). It is also significant that the DeKalb BRE may only act on voter registrations within its own county. See Manders, 338 F.3d at 1313 (alluding that a jurisdictional limitation may weigh against Eleventh Amendment immunity). However, considering that the State sets so many of the DeKalb BRE's duties, the Court finds that this factor weighs in favor of immunity.

b.      *Factor Two: Degree of State Control*

The second factor assesses the degree of control the State exercises over the entity.  See id. at 1309.  As noted in Casey:

> [T]he State exercises significant control over the Board's election-related activities. The state fixes the duties of the Board, see S.B. 360 § 8 (vesting Board of Elections with "the powers and duties of the former Clayton County election superintendent relating to the conduct of primaries and elections," as well as "the powers and duties of the Clayton County Board of Registrars relating to the registration of voters and absentee balloting procedures."); O.C.G.A. §§ 21-2-70, -212 (setting forth duties of election superintendents and registrars respectively), establishes the minimum qualifications for Board members, see S.B. 360 § 3, sets certification and minimum training requirements, and disciplines officials who fail to comply with those requirements, see O.C.G.A. § 21-2-100 (requiring at least one member of county board of elections or designee of board to attend minimum of 12 hours training annually as selected by Secretary of State, and providing that failure to attend training may result in imposition of fines by State Board of Elections); O.C.G.A. § 21-2-101 (requiring designee of board of elections charged with daily operations of such board to complete a certification program approved by the Secretary of State, and providing that Secretary of State, in his or her sole discretion, may waive certification requirement in whole or part).

2007 WL 788943, at *8–9.  However, as set out in a recent Eleventh Circuit opinion, the degree of control is not to be assessed generally, but in light of the particular function at issue.  See McAdams v. Jefferson Cty. 911 Emergency Communs. Dist., 931 F.3d 1132, 1135 (11th Cir. 2019) (noting that the second factor strongly weighed against considering communications districts as arms of the State because there was

no evidence that the State of Alabama exerted any control over the particular function at issue).

To that end, the Court finds that the State does not exercise significant control over the DeKalb BRE's determination of voter eligibility.  Here, the Georgia Code denotes that the DeKalb BRE is independently responsible for determining the eligibility of voters in DeKalb County.  See O.C.G.A. §§ 21-2-217(b), 21-2-226(a) ("It shall be the duty of the county board of registrars to determine the eligibility of each person applying to register to vote in such county.").  Additionally, the DeKalb BRE and its employees are responsible for overseeing and adjudicating the voter registration challenges at issue in this case.  See §§ 21-2-228, 21-2-229 (mandating that "the registrars shall set a hearing on such challenge" and "the registrars shall determine said challenge and shall notify the parties of their decision").  Thus, in light of the particular function at issue, the Court finds that this factor weighs against Eleventh Amendment immunity.  See McAdams, 931 F.3d at 1135 (emergency communications district not an "arm of the State" because Alabama Code bestowed the powers onto the county).

### c. Factors Three & Four: Funds & Judgments

The final two (2) factors inquire as to the source of the entity's funding and whether the State is responsible for judgments against the entity.  Manders, 338 F.3d at 1309.  Here, both factors weigh against immunity.  According to the Georgia

Code, counties are responsible for funding their respective boards of elections. See O.C.G.A. § 21-2-71 (noting that the governing authority must appropriate funds to its board of elections that it "shall deem necessary for the conduct of primaries and elections in such county," including for poll officers, polling places, ballot supplies, maintenance of voting equipment, and other expenses).  And while there is no definitive guidance as to who must pay a judgment against the DeKalb BRE, because the county is responsible for "[a]ll other expenses arising out of the performance of [the board's] duties under this chapter," see O.C.G.A. § 21-2-71(5), the Court finds that the DeKalb BRE would likely pay judgment against it. See Rosario v. Am. Corrective Counseling Servs., 506 F.3d 1039, 1046 (11th Cir. 2007) ("[A]s [Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir. 2000)] and other Eleventh Circuit cases have noted, the most important factor in determining immunity is who is responsible for judgments against the entity.").

In sum, the Court determines that while the first Manders factor weighs in favor of immunity, the second, third, and fourth factors weigh against Eleventh Amendment immunity.  Accordingly, the Court finds that the DeKalb BRE does not act as an arm of the State when it determines the eligibility of its county voters; thus, it is not entitled to sovereign immunity.

2.    Whether the *Ex Parte Young* Doctrine Applies

Because the Court concludes that the DeKalb BRE does *not* act as an arm of the State when it removes voters from its registration rolls, the Court need not address the Ex Parte Young doctrine, which only applies to state officials.  However, for the benefit of the Parties and out of an abundance of caution, the Court will provide this analysis.

In Ex Parte Young, the Supreme Court held that the Eleventh Amendment did not bar suits against state officials, sued in their official capacities, for prospective injunctive relief.  209 U.S. 123, 159–60 (1908).  In other words, assuming *arguendo* that the DeKalb BRE is an arm of the State, the suit would nevertheless proceed against the Individual Defendants if (1) Plaintiffs sue them in their official capacities (as they do) and (2) Plaintiffs seek prospective injunctive relief.  See id.

Defendants argue that the Ex Parte Young exception does not apply because Plaintiffs do not seek prospective injunctive relief, but retrospective relief.  [Doc. 27 at 11–12].  Stated differently, Defendants contend that while Plaintiffs characterize their requested injunctive relief as prospective in nature, it is, in fact, retrospective.  [Id. at 11].  Defendants submit that because Plaintiffs seek to remedy "alleged past harms rather than prevent prospective violations of federal law," the sought relief is

barred by the Eleventh Amendment.  [Doc. 35 at 5] (citing <u>Buchheit v. Green</u>, 705 F.3d 1157, 1159 (10th Cir. 2012)).

As set out by the Supreme Court, whether a request for injunctive relief is prospective requires a "straightforward inquiry into whether [the] complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." <u>Verizon Md., Inc. v. Pub. Serv. Comm'n</u>, 535 U.S. 635, 645 (2002) (internal quotation omitted).   Here, Plaintiffs allege that Defendants' current practices represent an ongoing violation of federal law.  <u>See</u> Compl. ¶¶ 2, 29, 31–34, 56–57.   Additionally, the overwhelming majority of relief Plaintiffs seek is unquestionably prospective in nature.   Thus, the Court finds that even if the DeKalb BRE were entitled to sovereign immunity, this case would nevertheless proceed against the Individual Defendants pursuant to <u>Ex Parte Young</u>.

## C.   Legislative Immunity

Finally, Defendants assert that they are entitled to legislative immunity.[7] [Doc. 27 at 12].   Legislative immunity applies when a plaintiff challenges an official's act that is legislative in nature.  <u>Woods v. Gamel</u>, 132 F.3d 1417, 1419 (11th Cir. 1998). "Whether an act is legislative turns on the nature of the act, rather than on the motive or intent of the official performing it." <u>Bogan v. Scott-Harris</u>,

---

[7] Defendants did not address this point at oral argument.   However, Defendants also did not expressly withdraw it.   Accordingly, the Court addresses Defendants' briefing on this point.

523 U.S. 44, 54 (1998). Therefore, "officials seeking absolute immunity must show that such immunity is justified for the governmental function at issue." Hafer v. Melo, 502 U.S. 21, 29 (1991) (internal citation omitted). "[M]ere administrative application of existing policies" is not a "legislative" act. Crymes v. DeKalb Cty., 923 F.2d 1482, 1485 (11th Cir. 1991).

Upon review, the Court finds that Defendants are not entitled to legislative immunity because Plaintiffs challenge Defendants' implementation of state policy. See Curling v. Worley, 761 F. App'x 927, 934 (11th Cir. 2019). As noted in Curling:

> [T]he State Defendants cannot claim legislative immunity because Plaintiffs did not challenge legislative acts. Instead, Plaintiffs challenged the State Defendants' implementation and execution of a state law and policy. See Crymes, 923 F.2d at 1485 (finding that "mere administrative application of existing policies" are not "legislative" acts); see also Scott v. Taylor, 405 F.3d 1251, 1256 (11th Cir. 2005) (finding that members of the board of election were not entitled to legislative immunity because the plaintiff was seeking only "prospective relief seeking to enjoin the enforcement of the challenged voting district and a declaration as to its legality"). Moreover, Plaintiffs did not challenge the mere enactment of the law or election rules, they contended only that the State Defendants' enforcement of that law in the future will burden their right to vote. Accordingly, because Plaintiffs challenged only the execution of state law, the State Defendants cannot claim entitlement to legislative immunity.

Id. The Court finds this reasoning directly applies here. Plaintiffs do not challenge the enactment of a state law, but merely Defendants' implementation and enforcement of the law. See id. Accordingly, Defendants are not entitled to legislative immunity.

In sum, the Court determines that none of Defendants' arguments warrant dismissal of this case.  Accordingly, the Court denies Defendants' motion.

## III.   Conclusion

For the foregoing reasons, the Court **DENIES** Defendants' Motion to Dismiss.  [Doc. 27].  In light of this ruling, the Court **DIRECTS** Defendants to file an answer on the docket within fourteen (14) days of the date of entry of this order.

**SO ORDERED**, this 2nd day of September, 2020.

*Eleanor L. Ross*
Eleanor L. Ross
United States District Judge
Northern District of Georgia